James **KIERNAN** and Mary Kiernan, Appellants,

v.

Gerald **VAN SCHAIK**, t/a Van's Atlantic Station.

No. 15076.

United States Court of Appeals Third Circuit.

Argued March 30, 1965.

Decided June 24, 1965.

John Merwin Bader, Bader & Biggs, Wilmington, Del., for appellants.

Rodman Ward, Jr., Prickett & Prickett, Wilmington, Del. (William Prickett, Jr., Wilmington, Del., on the brief), for appellee.

Before HASTIE and FREEDMAN, Circuit Judges, and WEBER, District Judge.

FREEDMAN, Circuit Judge.

This is a suit for damages arising out of a fall on the sidewalk entrance to defendant's gas station. There have been two trials; at the first trial the jury disagreed and on the second trial some months later before the same judge a verdict was returned for the defendant. Plaintiffs unsuccessfully sought a new trial on the sole ground that the verdict was against the weight of the evidence.

On this appeal plaintiffs make no complaint against the denial of their motion for new trial, but assign as error the trial judge's rejection of the questions they submitted to him for the *voir dire*.

 The error was not waived because it was not assigned in the motion for new trial. Objections to rulings made at trial are ripe for review and need not be reiterated in the court below on a motion for new trial. This is equally true whether no such motion is made or the objection is not included as a ground for new trial when a motion is filed. See 6 Moore, Federal Practice (2d ed. 1953), ¶ 59.14.[1]

The trial judge denied plaintiffs' request that he put the following questions to the prospective jurors on their *voir dire:*

"1. Are any of you employed by or stockholders in an insurance company which is engaged in the casualty insurance business?

"2. Are any of you engaged in the general insurance agency business or are any of you an agent for a casualty insurance company?

"3. Have any of you ever worked as a claims investigator or insurance adjuster?

"4. Have any of you read any articles or advertising in periodical publications which tend to indicate a relationship between the amounts of personal injury verdicts and increases in insurance premiums?

"5. (If any of the jurors answer the next preceding question in the affirmative) Notwithstanding any opinion which you might have formed regarding the subject of the advertising or articles just mentioned, would you be able to decide the question of liability and damages in this case solely on the evidence and the law without being influenced by such an opinion?"

While no reasons were specifically given for the ruling, it is apparent from the record that the trial judge refused the requests on three grounds: (1) the practice in the state and federal courts in Delaware is not to conduct any extensive *voir dire;* (2) Delaware counsel—including those who appeared in this case—subscribe to the services of an investigating agency which supplies them with information on all prospective jurors in the federal and state courts some time before the commencement of the trial sessions; and (3) a prima facie showing was required of the prospective

1. The explanation for this rule may perhaps lie in two characteristics of federal practice:

(1) A motion for new trial follows the judgment, which is entered immediately after the verdict. Thus a final, appealable judgment exists at the time a motion for new trial is filed. This differs from the practice in those states where the motion for new trial is first disposed of before judgment is entered on the verdict and in which, moreover, such motions are heard by a court en banc, thus affording a kind of intermediate appellate review.

(2) There is no need in federal practice for an exception if objection has been made at the trial. In the common law state practice error generally would not be noticed on appeal unless an exception had been taken to the ruling of the court on the original objection,—a survival of the practice of sealing a bill of exceptions in the days before court reporters.

juror's connection with the business of insurance before the questions would be considered.

■ 1. The right to an impartial jury in the federal courts in civil and criminal cases is guaranteed by the Constitution. The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed * * *." Amendment VII preserves "the right of trial by jury" in civil cases, and although the impartiality of the jury is not expressly mentioned it is inherent in the right of trial by jury and is implicit in the requirement of the Fifth Amendment that "No person shall * * * be deprived of life, liberty, or property, without due process of law * * *."

■ The Federal Rules, which are substantially identical in civil and criminal cases, leave it to the discretion of the court whether the voir dire shall be entrusted to counsel or conducted by the court, and provide that in the latter event the court must permit such supplementary examination by counsel as it deems proper or shall itself submit such additional questions to the prospective jurors.[2] Here, in the manner in which the voir dire is conducted, the widest discretion necessarily is reposed in the trial judge.

■ The present question, of course, is not the allocation of the inquiry between the court and counsel. Nor is there any problem of an interminable examination, an abuse which the Federal Rules were intended to correct.[3] What is here involved is the permissible substantive content of the voir dire examination. In this, too, as well as in the procedural area, a wide discretion necessarily resides in the trial court[4] which is familiar with the nature of the case, the demeanor of the prospective jurors and the general circumstances which surround the opening of the trial. This "broad discretion as to the questions to be asked" on voir dire is "subject to the essential demands of fairness."[5]

■ The questions were rejected because of the court's reliance on an existing local practice of a limited voir dire examination which denies its use to assist counsel in the exercise of the right of peremptory challenge (See colloquy at R. 11) and drastically curtails it

2. Rule 47(a) of the Rules of Civil Procedure provides:

"Examination of Jurors. The court may permit the parties or their attorneys to conduct the examination of prospective jurors or may itself conduct the examination. In the latter event, the court shall permit the parties or their attorneys to supplement the examination by such further inquiry as it deems proper or shall itself submit to the prospective jurors such additional questions of the parties or their attorneys as it deems proper."

Rule 24(a) of the Rules of Criminal Procedure is identical except for the necessary change in the reference to criminal proceedings.

3. See The Jury System in the Federal Courts, Report of the Judicial Conference Committee on the Operation of the Judicial System, September 1960, 26 F.R.D. 409, 465; United States v. Dennis, 183 F.2d 201, 226–228 (2 Cir. 1950), L. Hand, J., affd. 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951).

4. In the leading case of Connors v. United States, 158 U.S. 408, 413, 15 S.Ct. 951, 953, 39 L.Ed. 1033 (1895), the Court said: "* * * [A] suitable inquiry is permissible in order to ascertain whether the juror has any bias, opinion, or prejudice that would affect or control the fair determination by him of the issues to be tried. That inquiry is conducted under the supervision of the court, and a great deal must, of necessity, be left to its sound discretion. This is the rule in civil cases, and the same rule must be applied in criminal cases." See also Murphy v. United States, 7 F.2d 85 (1 Cir. 1925), cert. denied 269 U.S. 584, 46 S.Ct. 120, 70 L.Ed. 424 (1925); United States v. Dennis, 183 F.2d 201, 228–229 (2 Cir. 1950), affd. 341 U.S. 494, 71 S.Ct. 857 (1951).

5. Aldridge v. United States, 283 U.S. 308, 310, 51 S.Ct. 470, 75 L.Ed. 1054 (1931); Sellers v. United States, 106 U.S.App. D.C. 209, 271 F.2d 475 (1959).

in aid of the right of challenge for cause. The rejection of appropriate questions on *voir dire* for such erroneous reasons amounts to an abuse of discretion. See Bailey v. United States, 53 F.2d 982 (5 Cir. 1931). A jury's impartiality may not be assumed without inquiry, as in the case of a judge. Jurors are drawn from the general body of the community for a short term of service, usually lasting a few weeks, and then return to their customary occupations with neither training nor traditions of impartiality. They must often be unaware of their own disqualification in specific cases, especially since the standards for jury service differ in various parts of the country.[6] Litigants therefore have the right, at the least, to some surface information regarding the prospective jurors. Such information may uncover ground for challenge for cause. If it does not, it will be available in the intelligent use of the peremptory challenge,[7] which is the antithesis of challenge for cause. The traditional right of peremptory challenge recognizes that matters of bias or prejudice may be sensed or suspected without possibility of proof, and therefore permits counsel to exercise his inarticulate instinctive judgment, which he need not, if he could, attempt to justify.

In Dennis v. United States, 339 U.S. 162, 70 S.Ct. 519, 94 L.Ed. 734 (1950), the Supreme Court made it clear that individual bias of a juror was appropriate for inquiry on *voir dire*, although it reaffirmed its earlier decisions in the Wood and Frazier cases[8] that government employment alone should not disqualify jurors in the District of Columbia. The Court said: "The way is open in every case to raise a contention of

bias from the realm of speculation to the realm of fact. (p. 168, 70 S.Ct. p. 521) \* \* \* Preservation of the opportunity to prove actual bias is a guarantee of a defendant's right to an impartial jury." (pp. 171–172, 70 S.Ct. p. 523). At the same term the Court in a per curiam opinion reversed a conviction because the trial judge had not permitted defendant's counsel to interrogate prospective jurors who were government employees regarding the possible influence on them of an executive order dealing with loyalty. Morford v. United States, 339 U.S. 258, 70 S.Ct. 586, 94 L.Ed. 815 (1950).

In following a local custom which forbids *voir dire* examination in aid of peremptory challenge and in effect denies it in aid of challenge for cause the court below deprived the plaintiffs of a necessary and important right, recognized as such by the Supreme Court as recently as Swain v. State of Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). The Court there had occasion to review the development of peremptory challenges and challenges for cause in England and this country. In the course of this review Mr. Justice White said: "In contrast to the course in England, where both peremptory challenge and challenge for cause have fallen into disuse, peremptories were and are freely used and relied upon in this country, perhaps because juries here are drawn from a greater cross-section of a heterogeneous society. The *voir dire* in American trials tends to be extensive and probing, operating as a predicate for the exercise of peremptories, and the process of selecting a jury protracted. The persistence of peremptories and their extensive

---

6. In rural areas disqualification because of acquaintance with the parties or counsel would render the selection of a jury well-nigh impossible. Yet in large urban centers it is commonplace to excuse all jurors who are acquainted with a party or counsel—as was in fact done in the first trial of this case—notwithstanding the historical origin of the jury system in the selection of 12 jurors familiar with the parties and the cause of action itself.

7. See Comfort v. Mosser, 121 Pa. 455, 464–466, 15 A. 612 (1888); Bailey v. United States, 53 F.2d 982, 983–984 (5 Cir. 1931); Beatty v. United States, 27 F.2d 323 (6 Cir. 1928); Armborst v. Cincinnati Traction Co., 25 F.2d 240 (6 Cir. 1928).

8. United States v. Wood, 299 U.S. 123, 57 S.Ct. 177, 81 L.Ed. 78 (1936); Frazier v. United States, 335 U.S. 497, 69 S.Ct. 201, 93 L.Ed. 187 (1948).

use demonstrate the long and widely held belief that peremptory challenge is a necessary part of trial by jury. · See Lewis v. United States, 146 U.S. 370, 376 [13 S.Ct. 136, 36 L.Ed. 1011] Although '[t]here is nothing in the Constitution of the United States which requires the Congress [or the States] to grant peremptory challenges,' Stilson v. United States, 250 U.S. 583, 586 [42 S.Ct. 28, 63 L.Ed. 1154], nonetheless the challenge is 'one of the most important of the rights secured to the accused,' Pointer v. United States, 151 U.S. 396, 408 [14 S.Ct. 410, 38 L.Ed. 208]. The denial or impairment of the right is reversible error without a showing of prejudice, Lewis v. United States, 146 U.S. 370 [13 S.Ct. 136]; Harrison v. United States, 163 U.S. 140 [16 S.Ct. 961, 41 L.Ed. 104]; cf. Gulf, Colorado & Santa Fe R. Co. v. Shane, 157 U.S. 348 [15 S. Ct. 641, 39 L.Ed. 727]. '[F]or it is, as Blackstone says, an arbitrary and capricious right, and it must be exercised with full freedom, or it fails of its full purpose.' Lewis v. United States, 146 U.S. 370, 378 [13 S.Ct. 136] * * * (pp. 218–219, 85 S.Ct. p. 835).

"Indeed the very availability of peremptories allows counsel to ascertain the possibility of bias through probing questions on the *voir dire* and facilitates the exercise of challenges for cause by removing the fear of incurring a juror's hostility through examination and challenge for cause." (pp. 219–220, 85 S. Ct. p. 835).

The Court below exercised no discretion, but applied a supposed principle of general application. The principle it followed is erroneous, and its decision therefore must be reversed.

█ 2. A local practice forbidding detailed *voir dire* may not be sustained because of the availability of reports of private investigators. To conclude otherwise would be to confuse cause and effect. For it is when the door of inquiry is closed in busy courtrooms that the pressure of need breaks open in private investigations conducted outside the courtroom. The practice recognized by the Court below would in general reward the lawyer who specializes in accident or other litigation at the expense of the general practitioner. The availability, and even the use—as here—of investigation reports by both parties, is not adequate ground for permitting them to replace *voir dire*. For they are private, nonjudicial inquiries. The impartiality of jurors should be tested under the control of the court rather than by the unsupervised activity of investigators with all the undesirable possibilities of intimidation and jury tampering [9] which such surveillance inevitably presents.

3. The trial judge required some prima facie showing of the connection of a prospective juror with the business of insurance.[10] Many decisions in the United States have considered the reference to insurance on *voir dire* examination.[11] In most of them some inquiry is permitted although this is usually accompanied with the requirement that counsel must act in good faith. Provided the so-called good faith is shown,[12] counsel has been permitted in many cases to in-

9. The problems inherent in private investigations were apparent even in the present case. Counsel for defendant in explaining the prevailing Delaware practice to the trial judge, stated: "The names of jurors are provided to the attorneys and there are a number of investigative agencies in town that have made a regular business of investigating jurors so that you know the names, addresses, occupations and some other miscellaneous information. This has come to the attention of the court in a number of ways. For instance, * * * quite recently in front of Judge Layton [it was] mentioned that some of these investigative agencies were overstepping the bounds in some situations. And I think the Court knows this." (R. 8)

Cf. Dow v. Carnegie-Illinois Steel Corporation, 224 F.2d 414, 431 (3 Cir. 1955).

10. See R. 12.

11. See cases collected in 4 A.L.R.2d 761, 792 (1949); Busch, Law and Tactics in Jury Trials (1949), § 108.

12. In Lentner v. Lieberstein, 279 F.2d 385 (7 Cir. 1960), the heavy requirement of Illinois practice that good faith be shown by affidavit and testimony was approved.

quire regarding the juror's connection with the insurance business in general,[13] or with the insurance company interested in the specific case,[14] and even whether an individual juror was himself insured and, if so, with what company.[15]

To us these efforts to deal with the problem seem unsatisfactory. They fail to reflect adequately the significance of bias, which may assume a variety of forms of involvement beyond a crudely direct financial interest in the result. We are therefore required to fashion, if possible, a rule which fairly protects the right to an adequate *voir dire* examination and yet safeguards the principle which restricts disclosure that a defendant is insured.

The policy against disclosure to the jury of a defendant's insurance is founded on the view that knowledge of its existence would overthrow the requirement of fault as the foundation for negligence liability and moreover would result in extravagant verdicts. We need not now re-examine this policy.[16] It is based on the desire to assure a fair trial to a defendant, and it may not be permitted to destroy the plaintiff's equal right to a fair trial. A fair trial for a plaintiff in an accident case presupposes the right to a *voir dire* examination without any crippling limitations imposed by an overextension of the rule against disclosure that the defendant is insured.

That men will be prone to favor that side of a cause with which they identify themselves either economically, socially or emotionally is a fundamental fact of human character. It is not enough, therefore, to grant the rights of peremptory challenge and challenge for cause and then limit the factual basis for their use to the visible appearance of the jurors and the scant information on the jury list of their residence and occupation. While the practical limitations of a trial make it impossible to permit the parties on *voir dire* to penetrate deeply into the minds and emotions of prospective jurors, which are far too subtle and complex to be fully judged by surface scrutiny,[17] at least the visible ties which generally bind men to one side of a cause are clearly within the limited range of appropriate interrogation on *voir dire*. An analogous situation arose in Aldridge v. United States, 283 U.S. 308, 51 S.Ct. 470, 75 L.Ed. 1054 (1931), where a Negro defendant was convicted and sentenced to death for the murder of a white policeman. The trial court conducted its own *voir dire* and refused to permit the defendant's counsel to inquire whether the jurors had any prejudice against the defendant because the victim was a white man. In reversing the conviction Chief Justice Hughes said: "The argument is advanced on behalf of the government that it would be detrimental to the ad-

13. Duff v. Page, 249 F.2d 137 (9 Cir. 1957); Cleveland Nehi Bottling Co. v. Schenk, 56 F.2d 941, (6 Cir. 1932); Dooley v. Dooley, 290 S.W.2d 856 (Mo. App.1956); Barge v. House, 94 Ohio App. 515, 110 N.E.2d 425 (1952).

14. Wagner Electric Corporation v. Snowden, 38 F.2d 599 (8 Cir. 1930). In Duff v. Page, 249 F.2d 137 (9 Cir. 1957) and Smedra v. Stanek, 187 F.2d 892 (10 Cir. 1951), an additional showing was required of the jurors' knowledge of the insurance company's interest.

15. Braman v. Wiley, 119 F.2d 991 (7 Cir. 1941).

16. See 2 Wigmore, Evidence (3 ed. 1940), § 282a.

17. In United States v. Dennis, 183 F.2d 201 (2 Cir. 1950), affd. 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951), Judge Learned Hand said: "It is of course true that any examination on the *voir dire* is a clumsy and imperfect way of detecting suppressed emotional commitments to which all of us are to some extent subject, unconsciously or subconsciously. It is of the nature of our deepest antipathies that often we do not admit them even to ourselves; but when that is so, nothing but an examination, utterly impracticable in a courtroom, will disclose them, an examination extending at times for months, and even then unsuccessful. No such examination is required * * *. If trial by jury is not to break down by its own weight, it is not feasible to probe more than the upper levels of a juror's mind." (183 F.2d p. 227).

ministration of the law in the courts of the United States to allow questions to jurors as to racial or religious prejudices. We think that it would be far more injurious to permit it to be thought that persons entertaining a disqualifying prejudice were allowed to serve as jurors and that inquiries designed to elicit the fact of disqualification were barred. No surer way could be devised to bring the processes of justice into disrepute." (pp. 314–315, 51 S.Ct. p. 473).[18] If the question of racial bias may be opened up for reasoned judgment regardless of fears of unleashing an ugly, smouldering racial bigotry, there is even less cause to stifle inquiry regarding bias against personal injury claims because of fear that it may let loose the realization of the existence of casualty insurance.

■ It follows that in an accident case the inquiry whether a prospective juror is a stockholder or employee of a casualty insurance company or is employed as a claims investigator or insurance adjuster, or is an insurance company agent, is relevant in ascertaining bias against one claiming damages for negligence. A juror's identification with the business of investigating and paying damage claims affects his impartiality as significantly as does a juror's employment by a lawyer who is a specialist in prosecuting such claims. Such a relevant matter may not be shut out because it deals with insurance. The word "insurance" is not outlawed from the courtroom as a word of magical evil.

Jurors are not unaware that insurance is at large in the world [19] and its mention will not open to them a previously unknown realm. It is in fact more realistic for the judge to dissolve the phantom by open talk in the courtroom than to have it run loose in the unconfined speculations of the jury room. The court has wide control over the *voir dire* and can adequately safeguard the inquiry by explaining to the jurors the limited scope and purpose of the examination and thus eliminate any implication of the existence or relevance of insurance in the case before it.

■ We hold, therefore, that in order to exercise intelligently his limited number of peremptory challenges and to determine whether ground exists for challenge for cause, a plaintiff in an accident case may make reasonable inquiry whether prospective jurors are or have been connected with the business of investigating or paying accident claims, either as employees, agents or stockholders of insurance companies or claims agencies without suggesting the existence of insurance in the case. An adequate caution should be given by the court to make it clear to the jury that these questions do not imply either that any defendant is insured or that the matter of insurance or lack of insurance is to be considered in reaching a verdict.

The court below erred, therefore, in refusing to adopt the first three questions, which dealt with the relationship of the prospective jurors with the claims

18. In Swain v. State of Alabama, 380 U.S. 202, 85 S.Ct. 824 (1965), the Court said: " * * * It [peremptory challenge] is no less frequently exercised on grounds normally thought irrelevant to legal proceedings or official action, namely, the race, religion, nationality, occupation or affiliations of people summoned for jury duty. For the question a prosecutor or defense counsel must decide is not whether a juror of a particular race or nationality is in fact partial, but whether one from a different group is less likely to be. It is well known that these factors are widely explored during the *voir dire* by both prosecutor and accused, Miles v. United States, 103 U.S. 304 [26 L.Ed. 481]; Aldridge v. United States, 283 U.S. 308 [51 S.Ct. 470]. This Court has held that the fairness of trial by jury requires no less. Aldridge, supra. Hence veniremen are not always judged solely as individuals for the purpose of exercising peremptory challenges. Rather they are challenged in light of the limited knowledge counsel has of them, which may include their group affiliations, in the context of the case to be tried. * * *" (pp. 220–221, 85 S.Ct. p. 836).

19. See Brown v. Walter, 62 F.2d 798, 800 (2 Cir. 1933). L. Hand, J.; 2 Wigmore, Evidence (3d ed. 1940), § 282a.

adjustment and insurance business. The rejection of the fourth and fifth questions was within the sound discretion of the court and in this we find no error.

The judgment will be reversed and the cause remanded with direction to award a new trial.