**AUTOMATED MARKETING SYSTEMS, INC., Plaintiff-Appellant,**

v.

**Donald R. MARTIN et al., Defendants-Appellees.**

**No. 72-1035.**

United States Court of Appeals, Tenth Circuit.

Oct. 5, 1972.

Robert E. Wagner, Chicago, Ill. (Carl F. Eiberger, Denver, Colo., on the brief), for plaintiff-appellant.

Richard C. Landrum, Denver, Colo., for defendants-appellees.

Before HILL, BARRETT and DOYLE, Circuit Judges.

HILL, Circuit Judge.

This is an appeal from the denial by the United States District Court for the District of Colorado of appellant's request for a preliminary injunction, seeking to enjoin appellees from further contacting or soliciting former customers of appellant, and from using confidential commercial information of appellant.

Automated Marketing Systems, Inc. (Automated) is a holding company with various divisions, one of which is Sales Follow-Up Company (Sales Follow-Up).

That division dealt in a service provided to automobile dealers called an "after sales program" consisting of mailed communications from the automobile dealer to his customers. The purpose of this service was to maintain contact and promote good relations between the dealer and the customer, with the hope of receiving the customer's future trade when he purchased another automobile. The mailings provided by Sales Follow-Up on behalf of the dealer contained, among other things, advice as to the most advantageous time for the customer to trade his car, customary holiday greeting cards, gifts and periodic service reminders.

Martin was initially employed by Automated in its Sales Follow-Up as a division sales manager in late 1967 and given responsibility for selling the after sales program to dealers in the company's Colorado region, with emphasis on the Denver area. In June, 1968, Martin was promoted to regional manager and given responsibility as supervisor of the salesmen of a large area of the central United States. In November, 1968, he was transferred to San Francisco, California, as regional manager of that area. A contract of employment was signed by Martin at that time which contained the restrictive covenant that forms one of the bases of Automated's requests for preliminary injunction. Martin was subsequently promoted to assistant national sales manager, then to national sales manager with responsibility for the entire United States. No employment contracts were ever executed at the times of his promotions to these subsequent positions. Martin was terminated by Sales Follow-Up on August 15, 1970. In November, 1970, Martin and Grothe established Consumer Contact Corporation, offering essentially the same type of after sales program as that offered by Automated.

Automated filed suit on August 23, 1971, and, after first outlining the development and characteristics of the after sales program, alleged various items which it contends were confidential commercial property.[1] Appellees in their answer admitted the confidential value of certain of the items,[2] but denied the confidential value of the remaining items. Automated sought recovery under five claims, four of which involved, either partially or entirely, claims for injunctive relief. The first claim alleged the breach of the restrictive covenant of an employment contract preventing Martin from diverting away customers of Automated.[3] The third and fifth claims alleged unfair competition by

---

1. (a) Market needs and sales techniques relative to after sales and prospecting programs.

(b) Consumer characteristics of users of AMS's [Automated Marketing System] programs, particularly information on advertising funds which represent a number of automobile dealers in the purchase of programs of the type here involved. This includes researched information on the needs and identities of the members of such funds.

(c) Customer lists and account statuses relative to current customers.

(d) Results of national customer surveys conducted by AMS.

(e) Rationale behind current programs in which MARTIN participated.

(f) Employment records on each sales employee of AMS including performance ratings.

(g) Cost pricing and related financial information.

(h) All fiscal matters of Sales Follow-Up Division of AMS.

(i) Complete planning study of Sales Follow-Up Division of AMS for the year 1971 including new product and service introduction, marketing plans, relationships with automobile manufacturers and their advertising agencies, pro forma income statements and complete capital requirements.

(j) Production techniques and information.

(k) Structures and relationships with suppliers of AMS.

(l) Various other trade secrets.

2. Items c, f, g, h, i, j, and k were admitted to be of confidential value.

3. 9. Employee agrees that for a period of 360 days immediately succeeding the date of any termination of his employment, he will not by influencing or attempting to influence Employer's previously existing

Martin in his use, on behalf of Consumer Contact Corporation, of Automated's confidential commercial property and secrets, and in his offer of confusingly similar services which were the product of Automated's research in development of the after sales program technology. The fourth claim alleged that Martin had induced a former divisional manager of Automated to terminate his employment with Automated for the purpose of soliciting his former dealer accounts as a representative of Consumer Contact Corporation, in violation of the restrictive covenant of his employment contract with Automated.

■■■ The necessary showing to obtain a preliminary injunction was defined by this court in Crowther v. Seaborg, 415 F.2d 437 (10th Cir. 1969), where, at 439 we stated:

> In hearings upon motions for temporary or preliminary injunctive relief, the burden is upon the one requesting such relief to make a prima facie case showing a reasonable probability that he will ultimately be entitled to the relief sought. The applicant has the additional burden of showing a right to the specific injunctive relief sought because of irreparable injury that will result if the injunction is not granted.

The trial court, in making its findings of fact and conclusions of law, first noted that the employment agreement introduced into evidence by Automated was not signed by anyone on behalf of Sales Follow-Up. The court subsequently found, based on the evidence presented, that no agreement had ever been signed by the plaintiff, Automated. Without making a determination, the trial court also questioned the contract's enforceability for lack of mutuality and Martin's being subject to any contract at the time he was terminated, in view of the probability that the employment contract came to an end when Martin was pro-

moted to assistant national sales manager.

With regard to the mutually agreed confidential commercial property, the court found that even with appellees' admission of the confidential nature of certain items, there was no proof that they had appropriated, taken away or used any of this information. With respect to the remaining items alleged by Automated but not admitted by appellees to be confidential, the court found these items were not "customarily or ever included within the definition of a trade secret or confidential information." The court also found there had been no misappropriations of trade secrets. The court observed that the information could be easily compiled due to the wide distribution of the after sales program and published statements about the program.

In regard to the employment of one of Automated's former employees, the trial court found that appellees had not employed Smith at the time of the hearing, and further found no immediate threat that Smith would be employed by Consumer Contact Corporation to solicit his former accounts.

The trial court also noted in Automated's annual report for 1970 that Automated had enjoyed a reasonably successful year despite vigorous competition and an economic downturn in the automobile industry. The report continued with the prospect that former customers who tried a competitor's service would soon be won back. The court, quite correctly, interpreted this as evidence of Automated's conclusion that the harm was not irreparable.

■■■ The trial court, in denying the injunctive relief sought, concluded from the record that Automated had not shown a substantial probability of succeeding on the merits. The court further concluded that if customers had been obtained in violation of a restric-

---

customers, or otherwise, either directly or indirectly, divert or attempt to divert from Employer any business of any kind

in which Employer was engaged at any time during the period of 360 days immediately preceding such termination.

**1184**

tive covenant, if a valid covenant did exist, or by unfair competition, the remedy of law will still give Automated adequate recourse. The trial judge's findings of facts are supported by the evidence; the denial of injunctive relief was not error as a matter of law nor an abuse of discretion.[4]

The order denying appellant's preliminary injunctive relief is affirmed.

---

4. Crowther v. Seaborg, 415 F.2d 437 (10th Cir. 1969).