**Sheryn Kautz FIETZER and Oward Kautz, Plaintiffs-Appellees,**

v.

**FORD MOTOR COMPANY, Defendant-Appellant.**

No. 79–1872.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 6, 1979.

Decided May 13, 1980.

---

Paul E. Schwemer, Milwaukee, Wis., for defendant-appellant.

Peter S. Nelson, Appleton, Wis., for plaintiffs-appellees.

Before SWYGERT, BAUER and CUDAHY, Circuit Judges.

SWYGERT, Circuit Judge.

Defendant Ford Motor Company (Ford) appeals from a jury verdict finding the defendant eighty-five percent comparatively negligent for the injuries suffered by plaintiff Sheryn Kautz Fietzer when the Ford Mercury Comet which she was driving was struck from behind by an automobile driven by Douglas Hilker.[1] The jury found Hilker was fifteen percent negligent for plaintiff's injuries. Ford seeks a new trial on the grounds that the trial court improperly restricted the reception of evidence on the issue of the comparative causation between Ford and Hilker and that the jury's allocation of causal negligence was unreasonably disproportionate. Additionally, Ford challenges the trial court's conduct of the voir dire proceedings and its method of computing the interest on the damage award. We reverse the judgment entered on the jury's verdict and remand the cause for a new trial.

**I**

The parties appear before us for the second time in this products liability case arising from a two-car collision that occurred more than ten years ago.

On the evening of October 4, 1969, Hilker was driving his car north on Highway 45, a two-lane, north-south highway between New London and Clintonville, Wisconsin.

Fietzer, who was driving a Mercury Comet manufactured by Ford, was executing a left turn from a driveway on the west side of Highway 45 into the northbound lane of traffic when the Hilker car struck the Comet in the rear end. Upon impact, both cars flew into the air and Fietzer's automobile burst into flames. Among other injuries, Fietzer suffered burns to eighty percent of her body, the most serious ones caused by ignited gasoline in the passenger compartment.

Fietzer and her father Oward Kautz brought this diversity suit against Ford, alleging that the design of the fuel tank in the Comet was unreasonably dangerous. Plaintiff also had brought an action against Hilker, but settled. By the terms of the settlement, Hilker's liability to plaintiffs was disposed of and any right Ford might have to contribution from Hilker was cut off. Hilker's degree of responsibility for Fietzer's injuries, therefore, was an issue in the trial of the action against Ford only for the purpose of decreasing the amount of Ford's liability to plaintiffs to compensate for its loss of a right to contribution from Hilker. The jury, in the form of a special verdict, found Hilker negligent but that his negligence was not a cause of plaintiff's injuries. Rather, the jury made a finding that the Comet was dangerously defective and that plaintiff's injuries were caused solely by the defective condition in the product. Plaintiff was found not negligent. Ford appealed from the jury verdict maintaining that Hilker's negligence was, as a matter of law, a cause of plaintiff's injuries. In agreement with Ford, this court reversed the judgment entered on the verdict and remanded the case for a new trial on the limited issue of the comparative negligence of Hilker and Ford. *Fietzer v. Ford Motor Co.*, 590 F.2d 215 (7th Cir. 1978) (*"Fietzer I"*).

On retrial, the jury found that Ford's negligence in causing the injuries was eighty-five percent and the remaining percentage of causal negligence was appor-

---

1. Hilker is not a party in this action. *See* discussion, p. 283, *infra*.

tioned to Hilker. Damages were assessed against Ford in the amount of $398,907.71 (eighty-five percent of the verdict from the first trial). Additionally, seven percent post-verdict interest from the date of the verdict in the first trial was awarded to plaintiffs. This appeal followed.

## II

The first issue presented by Ford on appeal is that the trial court committed prejudicial error by unreasonably restricting the voir dire examination. It is maintained that as a result of the trial court's limited questioning of the jury panel, Ford was denied the opportunity to inquire into areas which might have uncovered grounds for challenge for cause and was unable to exercise intelligently its peremptory challenges. Having examined the record, we are compelled to agree with Ford.

Rule 47(a), Federal Rules of Civil Procedure, permits the trial court to conduct the examination of jurors but requires that ". . . the court shall permit the parties or their attorneys to supplement the examination by such further inquiry as it deems proper or shall by itself submit to the prospective jurors such additional questions of the parties or their attorneys as it deems proper."[2]

It is well settled that the trial court has great discretion in determining what questions may be asked venirepeople. *See generally* 5A J. Moore, Federal Practice ¶ 47.06. The substance of voir dire, however, is subject to the right of the parties to have an impartial jury. Courts have consistently held that the trial court, when endeavoring to preserve that right, should permit a reasonably extensive examination of prospective jurors so that the parties

have a basis for an intelligent exercise of the right to challenge. In *Kiernan v. Van Schaik*, 347 F.2d 775 (3d Cir. 1965), a personal injury case, the court addressed the policy which supports probing voir dire examination:

A jury's impartiality may not be assumed without inquiry, as in the case of a judge. Jurors are drawn from the general body of the community for a short term of service, usually lasting a few weeks, and then return to their customary occupations with neither training nor traditions of impartiality. They must often be unaware of their own disqualification in specific cases, especially since the standards for jury service differ in various parts of the country. Litigants therefore have the right, at the least, to some surface information regarding the prospective jurors. Such information may uncover ground for challenge for cause. If it does not, it will be available in the intelligent use of the peremptory challenge, which is the antithesis of challenge for cause. The traditional right of peremptory challenge recognizes that matters of bias or prejudice may be sensed or suspected without possibility of proof, and therefore permits counsel to exercise his inarticulate instinctive judgment, which he need not, if he could, attempt to justify.

*Id.* at 779 (footnotes omitted).

Our court "has been zealous in its protection of probing voir dire." *Beard v. Mitchell*, 604 F.2d 485, 501 (7th Cir. 1979). In *United States v. Lewin*, 467 F.2d 1132 (7th Cir. 1972), a criminal case in which voir dire was conducted pursuant to Rule 24(a), Federal Rules of Criminal Procedure,[3] this

2. Additionally, the local rules of the Eastern District of Wisconsin provide:

Section 8.03 *Voir Dire Examination.* Unless otherwise ordered, the voir dire examination of prospective jurors shall be conducted by the court. Counsel may submit proposed questions for voir dire in writing. Following such examination, counsel may request such additional questions as they may deem necessary in light of prospective jurors' response to the court's examination.

3. Rule 24(a) is couched in terms similar to Rule 47(a), Federal Rules of Civil Procedure, which applies to cases such as this one. The Advisory Committee Note to Rule 24(a) states:

This rule is similar to Rule 47(a) of the Federal Rules of Civil Procedure, 28 U.S.C., Appendix, and also embodies the practice now followed by many Federal courts in criminal cases. Uniform procedure in civil and criminal cases on this point seems desirable.

court held that the trial court may abuse its discretion when limitations placed on the parameters of voir dire threaten to undermine the purpose for conducting an examination of prospective jurors. Specifically, we stated that the trial court "must exercise its discretion so as not to block the reasonable exploration of germane factors that might expose a basis for challenge, whether for cause or peremptory." *Id.* at 1138. And, in *United States v. Dellinger*, 472 F.2d 340 (7th Cir. 1972), *cert. denied*, 410 U.S. 970, 93 S.Ct. 1443, 35 L.Ed.2d 706 (1973), we held that the trial court has the affirmative duty to pose questions that go beyond what may bring out information that would disqualify the juror for cause. "Thus it is essential to explore the backgrounds and attitudes of the jurors to some extent in order to discover actual bias, or cause." *Id.* at 367, citing *Kiernan v. Van Schaik, supra*, 347 F.2d at 779. In its entirety, the examination must reveal inquiry adequate "to call to the attention of the veniremen those important matters that might lead them to recognize or to display their disqualifying attributes." *United States v. Lewin, supra*, 467 F.2d at 1138.

The trial court chose to conduct voir dire in this case. In addition to asking the prospective jurors certain stock questions such as name, age, address, occupation, spouse's occupation, level of education, and acquaintance with the attorneys involved in the case, the extent of the court's interrogation of the jurors was as follows.

1. Would the juror be available for a trial lasting one week or more?

2. Were any jurors hard of hearing?

3. Did they work for or have close dealings with Ford?

4. Whether the juror had had a claim for personal injuries either as the result of an automobile accident or any other kind of an incident?

5. Whether there was any reason whatsoever why the person could not sit as a juror and decide the case fairly and impartially based upon the evidence submitted?

6. Whether any juror worked on a swing shift or the night shift?

Additionally, the parties pursuant to local rules received questionnaires filled out by the jurors.[4] The questionnaires revealed information concerning the juror's job, education, health, criminal record, and vital statistics.

Ford requested the trial court to ask the jurors several additional questions which focused on the particular facts of the case. Those included whether any juror had been in a rear-end collision, whether any juror had been a witness to an accident involving fire, and whether any juror or member of his or her family had ever suffered burn injuries, whether any juror or member of his or her family had been involved in an automobile accident producing injury, whether any juror ever owned a Mercury Comet and his or her experiences with it, whether any juror had experience in engineering or automotive maintenance, and whether any juror was employed on a swing shift. With the exception of the last question, the court refused to inquire into those areas. The trial court also denied Ford's request to ask the jurors whether they were aware of a newspaper article which appeared three days before the trial in *The Milwaukee Journal*, the newspaper with the largest circulation in Wisconsin. The article, which ran on the front page of the paper bearing the headline, "Fuel Tank Peril Cited in Mavericks, Comets," concerned findings announced by the National Highway Traffic Safety Administration in regard to fuel tank defects in Comets and Mavericks. The trial court gave no specific reason for these rulings at trial. In its decision denying Ford's post-trial motions, the court stated:

Defendant also maintains that it was error to limit voir dire questions of the jury

---

4. Local Rule 8.02 of the Eastern District of Wisconsin provides:

*Questionnaires.* Jury qualifications questionnaires of the panel shall be available for inspection in the office of the clerk at any time after the panel has been notified to appear.

panel. However, the Court conducted the voir dire and had notified counsel prior to trial to examine the jury questionnaires on file in the office of the Clerk of Court.

After a review of the transcript of the voir dire, we conclude that Ford's right to an impartial jury guaranteed by the Sixth Amendment was impaired by the district court's failure to sufficiently probe the jury. We believe minimal inquiry into such areas as the juror's or his family's involvement in rear-end collisions and collisions that resulted in burn injuries, in addition to questions concerning ownership of a Mercury Comet—all of which go to the nature of the case and the identity of the parties—was essential to producing disclosure by the jurors of possible prejudice against Ford.

Additionally, we believe that the better practice in this case would have been for the trial court to question the jurors about the pre-trial publicity rather than to ignore it. Specifically, the court should have asked the jurors if any one of them had read or had heard about the article and, if so, whether anything read or heard stood out in his or her mind. After determining the juror's degree of exposure to and interest in the article, the court then would have been able to have inquired whether he or she had formed an opinion about Ford's relative negligence in the case.

Plaintiffs contend that the questions which Ford requested were cumulative and therefore, they were not required to be propounded by the court. We disagree with plaintiffs' characterization of the nature of these questions. They went beyond the scope of the court's questions and were reasonably necessary to enable Ford to intelligently exercise its challenges. For example, we do not view Ford's question of whether any juror had witnessed an accident involving fire and whether any juror or member of his or her family had ever suffered burn injuries to be subsumed within the court's question of whether a juror "had had a claim for personal injuries . . . as a result of an automobile accident" or any other question posed by the court. Plaintiffs also argue that Ford has failed to

demonstrate that any prejudicial error resulted from the court's conduct of voir dire. However, in *Dellinger, supra,* 472 F.2d at 367, we stated that "it is not necessary for defendants to show that members of the jury were in fact prejudiced. The focus is exclusively on whether the procedure used for testing impartiality created a reasonable assurance that prejudice would be discovered if present." We find that no such assurance could be found from the voir dire examination in this case.

### III

Ford argues that it is entitled to a new trial because the jury was not allowed to consider the evidence they needed to decide the allocation of fault between Ford and Hilker in an intelligent manner. Specifically, Ford alleges nine occasions when the court improperly excluded defendant's evidence on the ground that it was relevant only to the question of causal negligence, when in fact it also tended to show the percentage of Ford's responsibility for plaintiff's injuries. Ford maintains that the jury's determination that it was eighty-five percent negligent and Hilker was fifteen percent negligent reflects the prejudicial effect of the trial court's evidentiary rulings.

In *Fietzer I* we instructed the district court to find Hilker causally negligent as a matter of law. Further, we held that on retrial, the jurors' sole task was that they "shall hear the evidence and determine the question of the comparative negligence of Hilker and defendant." *Fietzer v. Ford Motor Co., supra,* 590 F.2d at 219. The difficulties inherent in such an instruction are apparent. In most cases, the same jury considers simultaneously the question of the total liability of the various tortfeasors to the plaintiff and apportions the causal negligence. Thus, the jurors have the benefit of all the evidence and a full explanation of each issue. On retrial of this case, however, the trial court was mandated to separate the evidence. Our holding required the court to limit the evidence so that the issue of Ford's causal negligence was not reliti-

gated, yet, at the same time, to permit evidence showing the percentage of Ford's responsibility for the injuries to plaintiff and the percentage of Hilker's responsibility. Ford argues that the issues of causal negligence and apportionment of negligence were so interwoven in this case that the jury had to consider much of the same evidence they would have considered in resolving the former issue. It argues that evidence concerning the manner in which the vehicles collided, the severity of the physical impact of the various components upon each other, and the damages to the Comet should have been admitted at trial. Ford also maintains that proof of the nexus between the defective fuel system and plaintiff's injuries, and how that defect related to Hilker's conduct, was also essential to determine the comparative negligence of Hilker and the defendant.

It is apparent, given the nature of this case, that the trial court's task was not an easy one. Evidence concerning negligence and cause of the accident, on one hand, and, on the other hand, comparative causation of the injuries, although theoretically separable, in reality overlap to a degree. We have examined the evidence that the trial court permitted the jury to hear and the evidence that the court refused and conclude that the trial court overestimated the overlap of evidence. As a result of the trial court's restrictive view of the evidence on retrial, the jury, in deciding the question of comparative negligence, was not permitted to consider evidence critical to their determination.

For example, Ford attempted to introduce evidence of comparable vehicles which used the same type of mounted fuel system as was installed in plaintiff's Comet. It is clear that the evidence presented a jury question as to defective design and thus was not admissible in the second trial for *that* purpose. The evidence as well, however, presented a jury question as to the percentage of Ford's causal negligence. In the absence of this testimony which tended to show that Ford's design was compatible with industry standards, the jury could speculate that Ford had deviated from recognized design standards.

Another example of the court's overly-restrictive view of the evidence occurred when Ford attempted to cross-examine plaintiffs' expert about the engineering significance of the speed of Hilker's vehicle, the weight of his vehicle, and the probable effect of a metal "firewall" between the passenger compartment and the trunk. (The court had permitted plaintiffs' expert to testify that the absence of an adequate firewall was the most serious design defect of the Comet.) The trial court refused to allow these areas of questioning because

. . . it's already been determined that the car was defective. That it was negligent to sell the car. It's been determined and the law of this case and I see no reason to relitigate that issue.

\*     \*     \*     \*     \*     \*

He's [plaintiffs' expert] not here to establish that the Ford car was defective. That's already been established by the previous trial.

Although the trial court was correct in noting that the first jury grappled with this evidence for the purpose of determining Ford's negligence, the jury on retrial should have been permitted to consider this evidence for determining whether the nature of the impact of the Hilker automobile upon the Comet fuel system intensified Hilker's fault when compared to the defective condition of the Ford car.

The most damaging error, Ford maintains, was the trial court's refusal to admit evidence on the role of a "firewall" in the collision. At retrial Ford attempted, by offer of proof, to show that given the severity of the collision, a firewall would not have prevented plaintiff's injuries. The trial court prohibited Ford from putting into evidence the firewall issue on the ground that in the previous trial "the absence of a firewall was found as being causal." The trial court was correct in determining that at the second trial the jury should not have been allowed to consider the firewall question for the purpose of determining whether the gas tank should not have ruptured at

all. The evidence concerning the role of the firewall, however, was necessary for the jury to determine to what degree the fire had entered the vehicle through the firewall area and burned plaintiff, rather than entering through broken windows and a wheelwell which were ruptured by the severity of the impact caused by Hilker's excessive speed.

It is not necessary to discuss in detail all nine evidentiary errors that Ford maintains the trial court committed. In summary, they include exclusion of evidence relating to tests conducted in the trunk area of a 1974 Comet which show the amount of time required for gas flames in the trunk to enter the passenger compartment. (This evidence was offered for the purpose of showing the performance characteristics of the Comet vehicle in a fire-related accident and also was offered as being material to the cause of plaintiff's injuries.) Evidence of rear impact standards and general design concepts considered by Ford in the 1974 Comet was also excluded. Additionally, Ford was not permitted to establish through expert testimony that Hilker was intoxicated according to legal standards at the time of the collision. This evidence should have been considered by the jury in allocating the percentage of responsibility for plaintiff's injuries between Ford and Hilker.

■■■ Our view that the jury's inquiry on the issue of the apportionment of fault was overly circumscribed by the trial court is consistent with the law of comparative negligence in Wisconsin. Chief Justice Hallows, speaking for the Wisconsin Supreme Court in *Lovesee v. Allied Development Corp.*, 45 Wis.2d 340, 343–44, 173 N.W.2d 196, 199 (1970), stated:

In this process of apportionment the jury must consider the conduct of the parties as a whole and in doing so must consider the standard of care applicable to the acts or omissions constituting the tort-feasor's conduct, the nature and

character of the conduct and its intensity, directness and remoteness, as a substantial factor in the chain of causation. Similarly, the standard jury instructions of Wisconsin state that the jury be told to consider "the conduct of the parties as a whole." *See* Wis. Jury Instruction, Civil No. 1580. On the basis of these principles and the record as a whole, we conclude that Ford was not permitted to prove the very factors upon which the jury was instructed to determine the proportion of Ford's responsibility. A jury's apportionment of negligence cannot be based on speculation and conjecture. *Jagmin v. Simonds Abrasive Co.*, 61 Wis.2d 60, 84, 211 N.W.2d 810 (1973). Thus, a new trial is necessary.

By our decision today, we are not implying that all the evidence offered by the defendant should be admitted on retrial. Nor are we able to set forth a rigid standard to assist the trial court in determining the scope of the jury's inquiry in cases such as this one; they must be considered on a case-by-case basis. Here the court misapprehended Ford's purpose for offering the evidence, believing it served only the issue of the defendant's liability to the plaintiffs. It was also relevant, however, to the question of the comparative negligence of Hilker and Ford.

IV

Since the district court's judgment on the verdict must be reversed and the case remanded for a new trial, we believe the final contention raised by Ford warrants a few remarks.

■■■ The district court assessed the amount of interest on plaintiffs' damage award at a rate of seven percent, calculating from the date of the verdict in the first trial when the total damages were fixed at $469,303.19.[5] Ford maintains that plaintiffs were entitled to interest only from the date of the verdict in the second trial, rather than the first, because the damages award-

---

5. Under Wisconsin law, interest upon the amount of damages is recoverable "at the rate of 7% per annum from the time of verdict . . .

until judgment is entered" and "shall be computed by the clerk and added to the costs." Wis.Stat. § 814.04(4).

ed against Ford individually were not determined until the jury made its comparative negligence allocation in the second trial. The district court, however, reasoned that since the total damages were fixed by the first trial and the second trial did not involve the issue of damages, the damages were liquidated by the first jury verdict. The difference between the district court's approach and Ford's approach is approximately $60,000.

In determining that an award of interest from the date of the first judgment was proper, the district court relied on *Zeidler v. Goelzer*, 191 Wis. 378, 211 N.W. 140 (1926) and *Fehrman v. Smirl*, 25 Wis.2d 645, 131 N.W.2d 314 (1964). Those decisions, involving damages for personal injuries, held that in a case which is tried more than once interest may be awarded from the date of the first trial where the damages are liquidated after the first trial. In a tort action, damages are generally not deemed liquidated as long as there is a dispute as to the amount due. They become liquidated when the verdict has been approved or when the amount has been determined by judicial decision. *First Wisconsin Trust Co. v. Schmidt*, 173 Wis. 477, 180 N.W. 832 (1921).

Ford argues that the instant case is not controlled by these cases. It maintains that the damages, though fixed in the sense that the jury assessed a total amount, were not determinable at the first trial because they were subject to a later comparative negligence allocation between Hilker and itself. In support of its argument, Ford relies on a line of pre-verdict interest cases that begins with *Laycock v. Parker*, 103 Wis. 161, 79 N.W. 327 (1899). In that case, the Wisconsin Supreme Court held that interest is recoverable on a claimed sum of money not only as a penalty for the defendant's refusal to pay liquidated damages but also as an item of compensation "where the amount of damages is determinable, *i. e.,* where 'there be a reasonably certain standard of measurement by the correct application of which one can ascertain the amount he owes . . . .' " *Wyandotte Chemicals Corp. v.*

*Royal Elec. Mfg. Co.*, 66 Wis.2d 577, 225 N.W.2d 648, 651 (1975). (Under the latter rule, the *Laycock* court then awarded prejudgment interest to the plaintiff where the items of damages claimed were the costs of material and labor expended to complete the construction of a building.) Subsequent to *Laycock*, the Wisconsin Supreme Court established additional rules governing an award of pre-verdict interest. *See generally Pappas v. Jack O. A. Nelsen Agency, Inc.*, 81 Wis.2d 363, 260 N.W.2d 721, 727 (1978). Of particular importance to this case is the rule set forth in *City of Franklin v. Badger Ford Truck Sales*, 58 Wis.2d 641, 207 N.W.2d 866 (1973). There the Wisconsin Supreme Court stated that even though damages may be undisputed or may be ascertainable, such as in *Laycock*, pre-judgment interest cannot be recovered in a suit instituted against multiple defendants. In that case, the damages were stipulated to at trial but the court refused to award prejudgment interest because it was impossible, prior to judgment, for the individual tortfeasors to determine the amount which should be tendered in order to avoid that interest. *Id.* at 874.

*Fehrman* and *Zeidler*, which the district court relied upon, are distinguishable from the case at bar. In neither case was the damage award to be apportioned among defendants following the second trial. Therefore, no dispute existed as to the amount due by the defendants. Moreover, the amount assessed against the defendant in the second trial was identical to the amount assessed against him in the first trial. Thus, "it was theoretically possible for a tender to have been made" following the first trial. *Fehrman, supra*, 131 N.W.2d at 321.

Plaintiffs have not suggested why the view of interest recovery expressed in *City of Franklin* should not be adopted here, as Ford suggests. They merely state that Ford's argument is confined solely to pre-verdict interest cases. We believe, however, that the policy underlying those cases should apply also to this case. It is simply unfair to allow recovery for interest from

the date of the first trial when it was impossible for Ford at that date to determine the portion of claimed damages for which it would be liable so that that amount could be tendered and the interest thereon stopped from accruing.

From the reasoning set forth above, it follows that upon the retrial of this case, the plaintiffs will be entitled to interest on the damage award from the date of the verdict in that trial, but not prior to that time.

The judgment appealed from is reversed and the cause is remanded to the district court for a new trial on the issue of the comparative negligence between Hilker and Ford.