**ART PRESS, LTD., a Canadian corporation, Plaintiff-Appellee,**

v.

**WESTERN PRINTING MACHINERY COMPANY, an Illinois corporation, Defendant-Appellant.**

No. 85–2192.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 23, 1986.

Decided May 30, 1986.

Rehearing and Rehearing En Banc Denied June 27, 1986.

Robert E. Kehoe, Jr., Wildman, Harrold, Allen & Dixon, Chicago, Ill., for defendant-appellant.

Richard J. Gray, Jenner & Block, Chicago, for plaintiff-appellee.

Before BAUER, COFFEY and RIPPLE, Circuit Judges.

BAUER, Circuit Judge.

A jury awarded plaintiff, Art Press, Ltd., $94,709.10 in a warranty action for damages resulting from plaintiff's purchase of a paper cutting machine built by the defendant, Western Printing Machinery Company. We vacate the jury's verdict and the award and remand for a new trial because the district court unduly restricted the voir dire of the venirepersons.

## I.

We will discuss the facts underlying this action only insofar as they are important to the trial court's voir dire of the potential jurors. At the final pre-trial conference, plaintiff's attorney requested that the trial judge ask each venireperson his occupation and level of formal education, and whether he had any family or friends in the printing or printing equipment business. Defendant's attorney joined in this request and further asked the court to question the potential jurors as to their mechanical aptitude, their hobbies and interests, and other background information.

The trial court suggested that the parties stipulate to a minimum educational level requirement for the jurors, but plaintiff's counsel declined. The trial court then asked counsel why he was interested in voir dire concerning the level of formal education, to which plaintiff's counsel responded:

[I]t helps me when I'm addressing the juror if I have some idea of who that juror is. It's just a question—and perhaps [defendant's counsel] will share my view here—of my understanding of what I need to do as a lawyer to relate to that particular juror, and if I have some idea of the educational background or the occupation of that juror, it allows me, I think, to do a better job of lawyering.

Defendant's counsel then added:

I guess there are a number of things to look for in trying to decide what is a good juror for this case or any case, although you want to tailor it to the ability to hear and understand the kinds of issues that are presented in this particular case. Certainly, we want to try to ferret out any bias that a witness may have, but on top of that, I think we also want to try to familiarize ourselves with the chemical background of the jurors, because each of these jurors is asked to bring to bear their background, experience and common judgments, common experiences, in deciding these issues, and in connection with trying to make a decision whether or not to exercise a peremp-

tory challenge, I know myself, and I suspect [plaintiff's counsel], too, would like to know as much as we possibly can about each of these potential jurors. I agree with [plaintiff's counsel] that I don't think we can set any qualifications for eligibility here.

The trial judge stated that he had "grave doubts" about asking questions concerning education because he had once observed a case in which

one of the lawyers used his peremptory challenges to get rid of the only jurors who seemed by their background to be equipped to understand the case. That's why if you want to stipulate that you were looking for some minimum education, that would be fine, but I don't want you using—one of you using your peremptory challenges to get rid of a person who has some business background or some education and end up with a jury of people who don't know what's going on.

The trial judge took the parties' requests under advisement, but stated that he did not "want to make the voir dire a big deal in a case that's only going to last a couple of days."

When the jury venire was assembled, the trial judge first determined whether any of the venirepersons were not qualified under 28 U.S.C. 1865, which sets forth citizenship, minimum age, and other basic requirements for jury service. The trial judge then asked the prospective jurors only the following questions:

(1) the venireperson's name, address, and prior jury service;

(2) the venireperson's employer or occupation;

(3) the venireperson's familiarity with either party or their counsel;

(4) if the venireperson (or immediate family or friends) had been employed in the printing or machinery business;

(5) if the venireperson felt he could be impartial in the case.

The trial judge specifically rejected any voir dire as to the prospective jurors' edu-

cation, stating that he did not want to "drag out in public the deficiencies of their education" and that if one of the attorneys exercised "a peremptory challenge against someone who had a deficient education, it might be a little embarrassing." The trial judge further stated that the attorneys could "infer from their occupation and their accent what kind of education [the venirepersons] have."

On appeal, the defendant argues that the trial judge so limited the voir dire of the potential jurors that it was prevented from intelligently exercising its peremptory challenges and from eliciting information which could have led to challenges for cause. Plaintiff argues that the voir dire, though restricted, was sufficient to obtain an impartial jury.

## II.

■■■ A trial judge has broad discretion in limiting the voir dire of potential jurors, but this discretion is subject to the parties' right to an impartial jury. *Fietzer v. Ford Motor Co.*, 622 F.2d 281, 284 (7th Cir.1980). To protect this right, a trial court "should permit a reasonably extensive examination of prospective jurors so that the parties have a basis for an intelligent exercise of the right to challenge," *Fietzer*, 622 F.2d at 284, whether for cause or peremptorily. *Id.* at 285. *See United States v. Dellinger*, 472 F.2d 340, 368 (7th Cir.1972) (trial court must permit "sufficient inquiry into the background and attitudes of the jurors to enable [the parties] to exercise intelligently their peremptory challenges"). This court "has been zealous in its protection of probing voir dire," *Fietzer*, 622 F.2d at 284 (quoting *Beard v. Mitchell*, 604 F.2d 485, 501 (7th Cir.1979)), and will reverse a trial court for abuse of its discretion "when limitations placed on the parameters of voir dire threaten to undermine the purpose for conducting an examination of prospective jurors." *Fietzer*, 622 F.2d at 285.

■■■ We believe that the voir dire conducted in this case was so limited as to

preclude the parties from adequately discovering whether the jurors were biased or prejudiced and did not permit sufficient inquiry to allow the parties to intelligently exercise their peremptory challenges. We first note that it is not necessary, as plaintiff seems to assert, to show that a member of the jury was in fact prejudiced; it is enough to show that the voir dire did not reasonably assure that bias or prejudice would be discovered, if present. *Dellinger,* 472 F.2d at 367. We do not believe that the voir dire in this case provided that reasonable assurance because it failed to go beyond asking the venirepersons only a few of what this court in *Fietzer* termed "stock questions:" the rudimentary inquiries that establish the identity of the venireperson. The trial judge did not even inquire as to the level of the potential jurors' education, which *Fietzer* also stated was a "stock question." [1] The only inquiry permitted beyond the basic questions about the venirepersons' identity was whether each potential juror believed he could be impartial. In *United States v. Lewin,* 467 F.2d 1132, 1138 (7th Cir.1972), this court held that such "a general question is inadequate to call to the attention of the veniremen those important matters that might lead them to recognize or display their disqualifying attributes." The trial judge permitted no inquiry designed to elicit the venirepersons' attitudes toward the general nature or particular facts of the case. *See Fietzer,* 622 F.2d at 286. This severe limitation undermined voir dire's purpose of eliciting information that shows the biases of a venireperson or provides counsel with a basis for exercising peremptory challenges. *See Fietzer,* 622 F.2d at 284 (quoting *Kiernan v. Van Schaik,* 347 F.2d 775, 779 (3rd Cir.1965)); *Lewin,* 467 F.2d at 1138. We therefore vacate the jury's verdict and award and remand for a new trial.

VACATED AND REMANDED

---

1. Although this court is sympathetic with trial judges who wish to avoid lengthy voir dire, a trial judge's desire not "to make the voir dire a big deal in a case that's only going to last a couple of days" is clearly subsidiary to his duty to impanel an impartial jury. *Dellinger,* 472 F.2d at 370 n. 42.