2 F.3d 778
 39 Fed. R. Evid. Serv. 490
 UNITED STATES of America, Plaintiff-Appellee,
v.
$94,000.00 IN UNITED STATES CURRENCY, ALONG WITH ANY
INTEREST EARNED THEREON IN FIRST FINANCIAL SAVINGS
ASSOCIATION ACCOUNT # 79-70063411, and $40,000.00 in United
States Currency, Along With Any Interest Earned Thereon in
Lincoln State Bank Account # 10-002-205-15, Defendants-Appellants,
and
Zaki Musa Baki YUSUF, Appellant.
 No. 92-1610.
 United States Court of Appeals,
Seventh Circuit.
 Submitted Dec. 9, 1992.*
Decided Aug. 26, 1993.
 
 William J. Lipscomb, Office of the United States Attorney, Milwaukee, WI, for plaintiff-appellee.
 Aaron Starobin, Donald Roy Fraker, Starobin & Associates, Thiensville, WI, for defendants-appellants.
 Before BAUER, Chief Judge, RIPPLE, Circuit Judge, and GRANT, Senior District Judge.**
 RIPPLE, Circuit Judge.
 
 
 1
 This is an appeal from a judgment of forfeiture entered by the district court on the government's 1990 Complaint for Forfeiture of funds deposited in two Milwaukee bank accounts, pursuant to the Currency and Foreign Transactions Reporting Act, 31 U.S.C. Sec. 5317(c) (1988).[1] Section 5317 makes the failure to report large sums of money, not the importing or exporting of the money, an illegal act. The accounts were in the name of appellant Zaki Musa Baki Yusuf, a Brazilian businessman. Mr. Yusuf filed a claim for the return of the monies, and the matter was tried before a jury. Final judgment was entered in favor of the United States, and on March 10, 1992, Mr. Yusuf filed this appeal. For the reasons that follow, we affirm the judgment of the district court.
 
 
 2
 * BACKGROUND
 
 
 3
 Mr. Yusuf had occasion to travel from Brazil to the United States twice prior to his May 12, 1989 visit, which forms the basis for this action. In both 1984 and 1987, he entered the United States and filled out two customs forms, Form 6059B and Form 4790. Form 6059B is the standard Customs Declaration Form required of all people entering the United States. The form requires international travellers to declare cash or monetary instruments in excess of $10,000.00. In addition, the form advises the traveller that, if he is carrying more than $10,000.00, a Form 4790, Report of International Transportation of Currency or Monetary Instruments, must also be filled out. The form warns that failure to file may result in civil penalties and/or criminal prosecution. In the case of flights coming in from Brazil, these forms are typically distributed before the flight lands and are available in English, Spanish, and Portuguese.
 
 
 4
 In 1984, Mr. Yusuf's Form 4790 indicated that he was carrying $20,400.00; in 1987 the completed Form 4790 indicated that he was carrying $25,000.00. In 1989, however, when he arrived in the United States at the Miami International Airport, he did not fill out a Form 4790. He admitted in his answer to the Amended Complaint that, when he entered the country, he was carrying $134,000.00. R. at 23. One week after his arrival, Mr. Yusuf, accompanied by Ibrahim Issa, deposited $94,000.00 in one Milwaukee bank and $40,000.00 in another. When he made these deposits, the bank personnel told him that they would file Form 4789's, which reported the large deposits to the government. Mr. Yusuf claims that the Customs Service had never asked him to fill out a Form 4790, and that he did not know of the requirement to declare the money that he was transporting into the United States.
 
 
 5
 On March 14, 1990, the government filed this forfeiture action, and amended it two weeks later to include a claim for the accrued interest on the bank accounts. The Notice of Complaint for Civil Forfeiture of Property states:
 
 
 6
 4. The Complaint for Civil Forfeiture In Rem seeks the forfeiture of the defendant properties pursuant to Title 31 United States Code, Section 5317(c). The defendant property is subject to forfeiture because there is probable cause to believe that the defendant properties were brought into the United States without filing Customs Form 4790 as required by Customs laws. Zaki Musa Baki Yusuf has knowledge of the requirements of filing Customs Form 4790 as he has filed them in the past.
 
 
 7
 R.9 at 2.
 
 
 8
 Mr. Yusuf filed a claim for return of the monies and requested production of documents from the government in October 1990. The government has never been able to produce the Form 6059B that Mr. Yusuf allegedly filled out incorrectly when he entered the country in 1989. At trial, it became clear that the government had instituted an unsuccessful search for the form on one occasion and had requested another search (which apparently did not take place) on another occasion. Tr. at 14-16, 18. However, the court denied Mr. Yusuf's motion to dismiss on the basis of the missing document.
 
 
 9
 Mr. Yusuf was granted two trial continuances because of illness, but the court denied his third request, saying that the Brazilian doctor's conclusory statements about Mr. Yusuf's diabetic condition, without supporting medical records, provided insufficient support for his motion. The trial proceeded in Mr. Yusuf's absence, and the jury returned the three special verdicts. The special verdict questions and answers were as follows:
 
 
 10
 [1.] Did the claimant, when he entered the United States on May 12, 1989, own the currency in question? The answer is No.
 
 
 11
 [2.] Did the claimant, when he entered the United States on May 12, 1989, have notice that he was required to complete Form 6059-B? Answer: Yes.
 
 
 12
 [3.] Did claimant, when he entered the United States on May 12, 1989, correctly fill out Form 6059-B? Answer: No.
 
 
 13
 Tr. at 263-64.
 
 
 14
 Mr. Yusuf appeals various issues. Some deal with the standards that govern civil forfeitures of this nature. Some deal with the conduct of the litigation. We shall address each issue in the following discussion.
 
 II
 BURDEN OF PROOF ON PROBABLE CAUSE
 A. Court's Allocation of Burden of Proof
 
 15
 Mr. Yusuf questions whether the allocation of the burden of proof regularly employed in other forfeiture situations ought to be employed in the context of currency reporting violations. As a general rule, in a civil forfeiture case, the government's initial burden is to establish probable cause to believe that the property is subject to forfeiture. United States v. On Leong Chinese Merchants Ass'n Bldg., 918 F.2d 1289, 1292 (7th Cir.1990), cert. denied, --- U.S. ----, 112 S.Ct. 52, 116 L.Ed.2d 29 (1991). "Probable cause" has been defined in this context as a "reasonable ground for the belief of guilt supported by less than prima facie proof but more than mere suspicion." United States v. Three Hundred Sixty Four Thousand Nine Hundred Sixty Dollars ($364,960.00) in United States Currency, 661 F.2d 319, 322-23 (5th Cir.1981). After probable cause has been demonstrated, "the ultimate burden shifts to the claimant to prove by a preponderance of the evidence that the property is not subject to forfeiture." On Leong, 918 F.2d at 1292.[2] This procedure is mandated in civil forfeiture proceedings pursuant to 19 U.S.C. Sec. 1615 (1988). This section provides in pertinent part:
 
 
 16
 In all suits or actions ... brought for the forfeiture of any vessel, vehicle, aircraft, merchandise, or baggage seized under the provisions of any law relating to the collection of duties on imports or tonnage, where the property is claimed by any person, the burden of proof shall lie upon such claimant; and in all suits or actions brought for the recovery of the value of [any such property] because of violation of any such law, the burden of proof shall be upon the defendant: Provided, That probable cause shall be first shown for the institution of such suit or action....
 
 
 17
 In addition, 19 U.S.C. Sec. 1600, enacted in 1984, explicitly makes this provision applicable to the matter before us:
 
 
 18
 The procedures set forth in sections 1602 through 1619 of this title shall apply to seizures of any property effected by customs officers under any law enforced or administered by the Customs Service unless such law specifies different procedures.
 
 
 19
 We also note that the Eighth Circuit, although not explicitly relying on the terms of 19 U.S.C. Sec. 1600, has adopted expressly the scheme of 19 U.S.C. Sec. 1615 for forfeitures under the currency reporting statute. United States v. Twenty Thousand Seven Hundred Fifty-Seven Dollars and Eighty-Three Cents ($20,757.83) Canadian Currency, 769 F.2d 479, 481 (8th Cir.1985).
 
 
 20
 Despite this congressional mandate, Mr. Yusuf argues that the punitive nature of civil forfeiture renders it more akin to a criminal than a civil proceeding. He submits that the burden should remain with the government because of the fundamental due process concern implicated by the forfeiture of such a large sum of money when the violation is the failure to fill out a form in order to perform an entirely legal act (i.e., import a sum over $10,000.00).
 
 
 21
 There can be little question that civil forfeiture is a harsh procedure, although it also must be acknowledged that it does serve an important function. As Judge Weinstein of the Eastern District of New York has written:
 
 
 22
 Money forfeited for violation of the currency reporting statute becomes an instrumentality of crime at the moment the traveler fails to declare it.
 
 
 23
 Forfeiture for violations of the Currency and Foreign Transactions Reporting Act is supportable as a reasonable method of ensuring enforcement of currency declaration requirements. Those requirements are, in turn, rational in light of the pervasive underground economy that avoids taxes. In addition to supporting inducements to pay taxes, the cash reporting requirements inhibit money-laundering and provide leads to criminal sources of cash. It cannot be said that the cash reporting-forfeiture statutes do not have well defined and sensibly effectuated ends.
 
 
 24
 United States v. United States Currency in the Amount of One Hundred Forty-Five Thousand, One Hundred Thirty-Nine Dollars ($145,139), 803 F.Supp. 592, 597 (E.D.N.Y.1992) (citation omitted); see also H.Rep. No. 91-975, 91st Cong.2d Sess., 19-20 (1970), reprinted in 1970 U.S.C.C.A.N. 4394, 4404.
 
 
 25
 We acknowledge that, when it comes to forfeitures, the distinction between criminal and civil proceedings is not, in all respects, a rigid one. During its last term, the Supreme Court of the United States held that forfeitures under the laws interdicting drug trafficking are subject to the strictures of the Excessive Fines Clause of the Eighth Amendment. See Austin v. United States, --- U.S. ----, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993). Nevertheless, the penalty of civil forfeiture, while sufficiently akin to the criminal law to invoke, at least in drug trafficking situations under 21 U.S.C. Sec. 881(a)(4) and (7), the strictures of the Eighth Amendment, does not convert a civil forfeiture proceeding into a criminal matter insofar as the allocation of the burden of proof is concerned. Congress deliberately has provided for civil forfeitures; it also has mandated the procedures to be followed. Mr. Yusuf offers us no substantial basis upon which to strike down that congressional judgment on constitutional grounds. Cf. id. (Scalia, J., concurring) (acknowledging that the same burden of proof as the one at issue here is applicable in forfeiture actions under 21 U.S.C. Sec. 881(a)(4) and (a)(7)).
 
 B. Existence of Probable Cause
 
 26
 Mr. Yusuf also questions whether the government had probable cause to seize his funds, that is, a "reasonable ground for the belief of guilt supported by less than prima facie proof but more than mere suspicion." $364,960.00, 661 F.2d at 322-23. In rejecting Mr. Yusuf's motion to dismiss for lack of probable cause because of the missing customs form, the district court held that "the aggregate of the facts here certainly give[s] rise to probable cause to forfeit the currency...." Tr. at 177. The court commented specifically that Mr. Yusuf had been through customs before and, therefore, presumably had notice of the reporting requirements. Id. Mr. Yusuf now submits that failure to fill out a Form 4790 does not necessarily imply wrongdoing, that the government did not prove that Mr. Yusuf had notice of the reporting requirements, and that only speculation links his deposit of the funds with his entry into the United States a week earlier.
 
 
 27
 The government made its probable cause presentation largely through the testimony of United States Customs Officer Robert Davis, who had been assigned on that day to the incoming Brazil flight on which Mr. Yusuf arrived. Officer Davis testified that that particular flight had been targeted for "high-risk inspection" because of the high incidence of drug importation from Brazil. Tr. at 132-33. He testified that the fact that he had entered information into the computer when he met Mr. Yusuf shows that Mr. Yusuf was subject to high-risk scrutiny. Id. at 147. The heightened scrutiny on these disembarking passengers involved some questioning and perusal of their 6059B forms, which had to have been properly processed and presented at the exit before the passenger would have been allowed to leave. Id. at 136-37. The officer also testified that there were prominently posted signs informing passengers in several languages of the need to report sums over $10,000.00 and the same instructions appeared on the Form 6059B. Id. at 135, 141-42. If any passenger had indicated to this officer that he had large amounts of currency, the passenger would have been sent to a secondary inspector. Id. at 137-38. The officer's computer record of his encounter with Mr. Yusuf indicated that he had not sent Mr. Yusuf on for a secondary encounter with another officer; the officer testified that his notation meant that Mr. Yusuf had not filled out a Form 4790. Id. at 145.
 
 
 28
 In its discussion of the burden it must carry in establishing probable cause, the government submits that it is not necessary for the claimant to have violated the law willfully or even to have had knowledge of the reporting requirements. Many courts that have addressed the issue of knowledge agree.[3] This circuit, however, has never ruled directly on the issue.[4] The Eleventh Circuit spoke to this issue when it unequivocally held that the statute should be read to require that knowledge of the reporting requirement be an element. United States v. One (1) Lot of Twenty-Four Thousand Nine Hundred Dollars ($24,900.00) in U.S. Currency, 770 F.2d 1530, 1534 (11th Cir.1985). In reaching this decision, the Eleventh Circuit relied heavily on the criminal counterpart to this statute in which willfulness is an element. See 31 U.S.C. Sec. 5322; United States v. O'Banion, 943 F.2d 1422, 1426 (5th Cir.1991). The Eleventh Circuit read both the "knowingly" in Sec. 5316 and the "willful" in Sec. 5322 to require knowledge of the reporting requirement in either context. $24,900, 770 F.2d at 1533-34 (quoting United States v. Granda, 565 F.2d 922, 925-26 (5th Cir.1978), while acknowledging that Granda's reasoning for equating the language in Sec. 5316 and Sec. 5322 was unclear).
 
 
 29
 We believe that the view expressed by the majority of the circuits is the better one. Specifically, we find the reasoning of Judge Pratt for the Second Circuit in United States v. $359,500 in United States Currency, 828 F.2d 930 (2d Cir.1987), to be persuasive: (1) Congress could have used identical language in both civil forfeiture and criminal provisions; it did not, and (2) if willfulness were an element in a civil forfeiture context, then Sec. 5321(c), providing for the Secretary of the Treasury to exercise discretion to remit part of the forfeiture to prevent citizens from being "unduly penalized for an inadvertent violation," would be superfluous. Id. at 933-34 (quoting Senate Committee on Banking And Currency, S.Rep. No. 91-1131, 91st Cong., 2d Sess. at 7 (1970)).[5] In any case, as the Ninth Circuit has pointed out in United States v. One Hundred Twenty-Two Thousand Forty-Three Dollars ($122,043.00) in United States Currency, 792 F.2d 1470, 1474 (9th Cir.1986):
 
 
 30
 The plain language of the statute controls. "Knowingly" in the statute modifies the verb "transports." The section does not support a reading that knowledge of the reporting requirement is an element of a section 5316 violation.
 
 
 31
 The government, therefore, need show only that it has probable cause to believe that the claimant entered the country knowing that he was transporting more than $10,000.00 and that the claimant did not report this fact on a Form 4790. The government need not prove any wrongdoing, other than failing to declare the money, because that is not an element of civil forfeiture. Nor need the government show actual knowledge of the reporting requirement.[6] Here, the evidence showed that large sums had been deposited in American banks (and duly reported on the appropriate bank reporting forms) by a Brazilian who had entered the country only a week earlier. In addition, customs records showed that, on two prior occasions, he had entered the country and had declared large sums of money. On the date of entry one week prior to the deposits, however, Mr. Yusuf had apparently not declared any large amounts of currency. No Form 4790 had been filed. Under the circumstances described by the customs officer who testified, it is extremely unlikely that Mr. Yusuf could have gone through Customs when he disembarked and avoided the increased scrutiny afforded that flight. Certainly, all this information, taken together, constituted sufficient direct and circumstantial evidence to justify institution of forfeiture proceedings.[7] Moreover, the fact that Mr. Yusuf has admitted in his answer that he did not file a Form 4790, a fact the officials knew prior to seizure, and that he had knowingly carried the money into the United States on May 12, 1989 (a fact they had reason to suspect earlier inasmuch as they knew he had carried in currency on other occasions and had shortly after arrival deposited two large sums in bank accounts), makes it clear that the government's case rests on solid ground.
 
 III
 TRIAL ISSUES
 
 32
 A. Court's Refusal to Sanction Government for Failure to Produce the Customs Form
 
 
 33
 We review the trial court's rulings regarding discovery matters for abuse of discretion. Philips Medical Sys. Int'l B.V. v. Bruetman, 982 F.2d 211, 214 (7th Cir.1992); Dole v. Local 1942, Int'l Bhd. of Elec. Workers, 870 F.2d 368, 371 (7th Cir.1989) (reversal of discovery ruling appropriate only if a "clear showing" of abuse). Likewise, a denial of a request for dismissal pursuant to Federal Rule of Civil Procedure 37(b) is reviewed for abuse of discretion. Crown Life Ins. Co. v. Craig, 995 F.2d 1376, 1381 (7th Cir.1993) (citing National Hockey League v. Metropolitan Hockey Club, 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976)).
 
 
 34
 Mr. Yusuf admits that he did not fill out a Form 4790, but submits that there are three possible explanations for the absence of the form: 1) he had not been given one because he had filled out the Form 6059B incorrectly; 2) the customs officials failed to give him a Form 4790; or 3) he had been permitted inadvertently to pass through customs without having completed the Form 4790. Appellant's Br. at 14. Mr. Yusuf contends that he was not given a Form 4790, and the government asserts that his failure to complete a Form 4790 must have been the consequence of his having filled out the Form 6059B incorrectly. Mr. Yusuf submits that the court abused its discretion when it denied his motion for sanctions against the government for failure to produce Form 6059B because the consequence was that the jury was required to speculate about the reason for its absence. In fact, the evidence was never made available because Customs was unable to produce the form. Mr. Yusuf argues that, without this form, the government did not have probable cause to seize the bank funds.
 
 
 35
 Mr. Yusuf relies on several criminal cases in support of his contention that the district court erred in failing to impose sanctions against the government. In Arizona v. Youngblood, 488 U.S. 51, 57-58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988) (quoting California v. Trombetta, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984)), the Supreme Court stated that " '[w]henever potentially exculpatory evidence is permanently lost, courts face the treacherous task of divining the import of material whose contents are unknown and, very often, disputed.' " Nonetheless, the Court has declined to impose sanctions in the absence of bad faith. See, e.g., Youngblood, 488 U.S. at 58, 109 S.Ct. at 337 (no bad faith when semen samples were collected, the respondent declined an opportunity to examine them, and they were later lost because of lack of refrigeration); Jones v. McCaughtry, 965 F.2d 473, 477 (7th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 360, 121 L.Ed.2d 272 (1992) (relying on Youngblood and Trombetta in rejecting petitioner's argument that his conviction was invalid even though he conceded that police had not discarded a semen sample in bad faith).
 
 
 36
 In a civil context, we have permitted defendants to benefit from the presumption that documents destroyed in bad faith were unfavorable to the destroying party.[8] Here, however, Mr. Yusuf has not even contended that the evidence has been withheld in bad faith. The government submits that it informed Mr. Yusuf during discovery that it could not locate the form, but Mr. Yusuf waited until Friday, January 17 to request sanctions when the trial was set to begin on Wednesday, January 22. Even at that point, he did not allege that the government had shown bad faith. The district court was critical of both Mr. Yusuf's counsel for failing to raise this issue in a timely fashion and of the government's position "which has led, obviously, the defendant as well as the court to believe that there was some sort of ongoing search being conducted when in fact there wasn't any, and there was no attempt other than the second request which was rebuffed." Tr. at 22. The court declined to impose a sanction, however, ruling that "the defendant is [not] put at any great disadvantage because of the failure to produce this document. At best, it's speculative. On the other hand, a plausible argument could be submitted by the plaintiff that it would be helpful to their case if they could produce it." Id. at 23.
 
 
 37
 Mr. Yusuf's delay in asking for sanctions against the government, including dismissal of the case, is particularly significant because, prior to the commencement of trial, he had stipulated that he had brought the currency in question into the country and that he had not filled out the Form 4790. Because there has been no contention that the government acted in bad faith in not producing the form, and in light of the damaging admissions that Mr. Yusuf has made, combined with his delay in requesting sanctions, we cannot say that the district court clearly abused its discretion in denying Mr. Yusuf's motion.
 
 B. Denial of the Third Continuance
 
 38
 We review the trial court's denial of a continuance for abuse of discretion. United States v. Woods, 995 F.2d 713, 716 (7th Cir.1993); Schneider Nat'l Carriers, Inc. v. Carr, 903 F.2d 1154, 1158 (7th Cir.1990). Here the district court accommodated Mr. Yusuf, a Brazilian resident, by acceding to two earlier requests for continuances because of his diabetic condition. However, the judge declined to grant a third continuance, requested on the day of trial, after Mr. Yusuf had failed once again to offer more than his doctor's conclusory statement regarding his infirmity in support of his motion. Mr. Yusuf argues that this denial was an abuse of discretion because there was no prejudice to the government, Mr. Yusuf's testimony was crucial to his case, there was no evidence of bad faith in his request, and there was no reason to distrust his physician's statement.
 
 
 39
 It is important to note that, when the court granted the second continuance, the judge made it abundantly clear that no further delays would be permitted. R.71.[9] When the third request was made, the court expressed its concern that Mr. Yusuf's severe diabetic episodes seemed to coincide with trial dates and that the additional supporting documentation that the court had requested had not been forthcoming. Clearly, given the latitude that the court had already afforded Mr. Yusuf, and the warning that the court had given about lack of documentary support, it is hardly surprising that Mr. Yusuf's third unsupported request was not granted. We cannot say, on these facts, that the court abused its discretion in denying a third continuance.
 
 
 40
 C. Court's Failure to Ask Mr. Yusuf's Proposed Questions at Voir Dire
 
 
 41
 Mr. Yusuf submits that the district court erred in failing to ask certain questions of the potential jurors during voir dire. The specific questions that he had tendered to the court involved the venire members' personal experiences with customs procedures and questions designed to elicit their opinions about the reporting requirements and the legality of transporting large sums of money across the United States border. He argues that failure to ask these questions permitted biases to remain undetected and that he therefore was not afforded a fair trial.
 
 
 42
 The district court has a great deal of discretion in selecting questions to be posed at voir dire, and we only reverse the judge's determinations for abuse of that discretion. Art Press Ltd. v. Western Printing Mach. Co., 791 F.2d 616, 618 (7th Cir.1986). The court should permit investigation into the prospective jurors' backgrounds sufficient to enable the parties to exercise challenges intelligently. Id. (citing Fietzer v. Ford Motor Co., 622 F.2d 281, 284 (7th Cir.1980)). The record reflects that the court asked a number of careful questions designed to elicit information about the potential jurors' experiences with customs, attitudes toward non-citizens, general educational background, and both experience with, and attitudes toward, law enforcement entities generally. Tr. at 48-98. Viewed as a whole, the voir dire questions provided the parties with an adequate foundation upon which to base their choices. Certainly, there was no clear abuse of discretion.
 
 
 43
 D. Introduction of Prior Currency Reporting Forms
 
 
 44
 Because of our ruling that knowledge of the reporting requirement is not an element of civil forfeiture under Sec. 5316, we need not address this issue. In any event, we see no abuse of discretion in the admission of this evidence. Unlike Mr. Yusuf, we do not read $400,000, 831 F.2d at 88, to suggest that proof that an individual had transported large amounts of money across the border in the past and that he had duly reported it may not be combined with other factors to provide officials with probable cause to believe that a reporting violation has taken place. We believe that the brief reference to such evidence in that case is best read as skepticism on the part of the court that conformity with the law on one occasion makes nonconformity on another occasion less probable.
 
 E. Admission of Mr. Yusuf's Affidavit
 
 45
 Because of the deference we accord to the trial court in matters of admission of evidence, we review those decisions only for abuse of discretion. United States v. Mokol, 939 F.2d 436, 438 (7th Cir.1991); Midcoast Aviation, Inc. v. General Elec. Credit Corp., 907 F.2d 732, 741 n. 6 (7th Cir.1990). After the government had made its probable cause presentation, counsel for Mr. Yusuf asked for admission of Mr. Yusuf's affidavit on the same question. Tr. at 153. The government objected to admission, arguing that the affidavit constituted impermissible hearsay and that, in any case, the probable cause phase of the proceeding was over. Mr. Yusuf's counsel countered with the argument that the affidavit could be excepted under Federal Rule of Evidence 804(b)(5). Under Rule 804(b)(5), evidence may be excluded from the hearsay rule if the declarant is unavailable and
 
 
 46
 (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.
 
 
 47
 The court rejected the affidavit, stating that it had given Mr. Yusuf great latitude in coming to court and that such a self-serving affidavit was not an effective substitute for his presence because the government would not have the opportunity to cross-examine. Tr. at 157-58. Mr. Yusuf contends that the district court abused its discretion in denying his motion.
 
 
 48
 The district court considered the offer of an affidavit in light of the history of the case and determined that it could not be an effective substitute for the live testimony of the claimant, who had repeatedly requested continuances. The court also saw the use of the affidavit as not best serving justice because it would allow a claimant to avoid the rigors of cross-examination. Id. at 157-58. While it is certainly true that Mr. Yusuf's absence from trial created problems, the court gave him a considerable amount of latitude, and we are reluctant to second-guess the court's judgment in declining to permit an affidavit to substitute for the claimant's presence.
 
 F. Dual Inference Instruction
 
 49
 Our review of disputed jury instructions is limited:
 
 
 50
 In general, appellate review of jury instructions is limited. See Binks Mfg. Co. v. National Presto Indus., Inc., 709 F.2d 1109, 1117 (7th Cir.1983). When reviewing the adequacy of jury instructions, the court should 'construe them in their entirety and not in artificial isolation.' Id. at 1117. Reversal is only mandated if the jury's comprehension of the issues is so misguided that a litigant is prejudiced.
 
 
 51
 Stachniak v. Hayes, 989 F.2d 914, 920 (7th Cir.1993) (quoting New Burnham Prairie Homes, Inc. v. Burnham, 910 F.2d 1474, 1483 (7th Cir.1990)). Following the instruction informing the jury that Mr. Yusuf bore the burden of proof, the court gave the following inference instruction:
 
 
 52
 Before a fact sought to be established can be said to have been proved by circumstantial evidence alone, it is necessary not only that the circumstances proved by the evidence shall give rise to a reasonable inference of such fact, but also that no other inconsistent equally reasonable inference can be drawn from those same circumstances.
 
 
 53
 Tr. at 251. Mr. Yusuf reads this instruction as indicating that the government should be given the benefit of the doubt if two equally strong inferences could be drawn from the evidence. A jury might reasonably determine that the fact that the form had not been produced could favor either the government or Mr. Yusuf. Mr. Yusuf submits that its absence suggests that he was never given either a Form 6059B or a Form 4790, and the government argues that he did not receive a Form 4790 because he filled out his Form 6059B incorrectly. Mr. Yusuf argues, once again, that, because this matter is akin to a criminal proceeding, the assumption used in like situations in a criminal context should obtain: a jury must be instructed to infer in favor of the defendant. See, e.g., United States v. Harris, 942 F.2d 1125, 1129-30 (7th Cir.1991).
 
 
 54
 The government points out that the court gave the standard circumstantial evidence instruction and that Mr. Yusuf does not argue that the instruction misstated the law. Mr. Yusuf's counsel had objected to the standard inference instruction and argued that, because this is a quasi-criminal proceeding, Mr. Yusuf is entitled to an instruction in his favor much the same as a criminal defendant would be entitled to the benefit of the doubt. Tr. at 242. However, this is not a quasi-criminal proceeding; it is a civil forfeiture matter; Mr. Yusuf has cited no authority, and we can find none, to indicate that he is entitled to such an instruction.[10]
 
 G. Special Verdicts
 
 55
 Under Federal Rule of Civil Procedure 49(a), the district court may submit special verdicts to the jury. Our review of the content of such special verdicts is limited to whether the court abused its discretion. United States Fire Ins. Co. v. Pressed Steel Tank Co., 852 F.2d 313, 316 (7th Cir.1988); Hibma v. Odegaard, 769 F.2d 1147, 1157 (7th Cir.1985). We must inquire about whether the verdicts presented the issues to the jury in such a way that it was not confused. Hibma, 769 F.2d at 1157. Mr. Yusuf now objects to the special verdict asking the jury to determine whether Mr. Yusuf owned the money. The jury's response to this question was "No." Mr. Yusuf's counsel objected to this question inasmuch as the original claim stated that he was the owner and that the parties had stipulated that Mr. Yusuf had carried $134,000.00 into the country and had subsequently deposited it in two Milwaukee banks. He objects to this special verdict because the issue of ownership was raised just prior to trial, because there was no evidence before the jury that could suggest that Mr. Yusuf was not the owner, and because the question itself served to raise suspicion of illegality in the minds of the jurors.
 
 
 56
 The government argues that the ownership of the funds goes to the claimant's standing, and this element took on greater importance on the first day of trial when it became evident that Mr. Yusuf would not be present. See Mercado v. United States Customs Serv., 873 F.2d 641, 644 (2d Cir.1989) (stating that Sec. 5317 requires that claimant bear the burden of demonstrating standing to challenge forfeiture).[11] Even if the question need not have gone to the jury, its submission did not amount to reversible error.
 
 
 57
 Mr. Yusuf's second argument is that the court erred in failing to give a special verdict on Mr. Yusuf's knowledge of the reporting requirements. We need not address this argument in light of our determination that actual knowledge of the reporting requirements is not an element that the government need prove in a civil forfeiture case.[12]
 
 Conclusion
 
 58
 For the foregoing reasons, we affirm the judgment of the district court.
 
 
 59
 AFFIRMED.
 
 
 
 *
 After this case was set for oral argument, the parties agreed to submit the case for decision on the briefs pursuant to Federal Rule of Appellate Procedure 34(f). Accordingly, the case has been decided on the briefs
 
 
 **
 The Honorable Robert A. Grant of the Northern District of Indiana is sitting by designation
 
 
 [1]
 31 U.S.C. Sec. 5317(c) provides as follows:
 If a report required under Section 5316 with respect to any monetary instrument is not filed (or if filed, contains a material omission or misstatement of fact), the instrument and any interest in property, including the deposit in the financial institution, traceable to such instrument may be seized and forfeited to the United States Government....
 31 U.S.C. Sec. 5316(a) (1988) provides that
 a person or an agent or bailee of the person shall file a report under subsection (b) of this section when the person, agent, or bailee knowingly--
 (1) transports, is about to transport, or has transported, monetary instruments of more than $10,000 at one time--
 ....
 (B) to a place in the United States from or through a place outside the United States....
 The forfeiture provisions of 31 U.S.C. Sec. 5317(c) were formerly codified at 31 U.S.C. Sec. 5317(b) and 31 U.S.C. Sec. 1102(a). The reporting requirement in 31 U.S.C. Sec. 5316(a) was formerly codified at 31 U.S.C. Sec. 1101(a).
 "Monetary instruments" is defined at 31 U.S.C. Sec. 5312(a)(3) as United States coins and currency and,
 as the Secretary may prescribe by regulation, coins and currency of a foreign country, travelers' checks, bearer negotiable instruments, bearer investment securities, bearer securities, stock on which title is passed on delivery, and similar material.
 
 
 [2]
 In addition, in civil forfeiture cases, circumstantial evidence may be used to show probable cause. United States v. $400,000.00 in United States Currency, 831 F.2d 84, 87-88 (5th Cir.1987) (citing United States v. $38,600.00 in U.S. Currency, 784 F.2d 694, 697 (5th Cir.1986)); United States v. Four Million Two Hundred and Fifty-Five Thousand, Six Hundred Twenty-Five Dollars and Thirty-Nine Cents, 551 F.Supp. 314, 324 (S.D.Fla.1982), aff'd, 762 F.2d 895 (11th Cir.1985), cert. denied, 474 U.S. 1056, 106 S.Ct. 795, 88 L.Ed.2d 772 (1986)
 
 
 [3]
 See United States v. $359,500 in United States Currency, 828 F.2d 930, 934 (2d Cir.1987); United States v. Forty-Seven Thousand Nine Hundred Eighty Dollars ($47,980) in Canadian Currency, 804 F.2d 1085, 1090 (9th Cir.1986), cert. denied, 481 U.S. 1072, 107 S.Ct. 2469, 95 L.Ed.2d 878 (1987); United States v. One Hundred Twenty-Two Thousand Forty-Three Dollars ($122,043.00) in United States Currency, 792 F.2d 1470, 1474 (9th Cir.1986); United States v. Twenty Thousand Seven Hundred Fifty-Seven Dollars and Eighty-Three Cents ($20,757.83) Canadian Currency, 769 F.2d 479, 482 (8th Cir.1985)
 
 
 [4]
 In United States v. Forty-Eight Thousand, Five Hundred Ninety-Five Dollars, 705 F.2d 909 (7th Cir.1983), this court reviewed the denial of a Federal Rules of Civil Procedure 60(b) motion filed by a German national, requesting relief from a default judgment of civil forfeiture under the predecessor statute to Sec. 5316. The appellant argued that the old version of the Form 6059B led his brother and him to believe that importing a sum in excess of $5,000.00 was an illegal act. (The 1974 version of Form 6059B, which was at issue in both United States v. Granda, 565 F.2d 922 (5th Cir.1978), and $48,595, was altered in 1978 in order to clarify the reporting requirement. The following note was added to the form: "It is not illegal to transport over $5,000 in monetary instruments; however, it must be reported." $48,595, 705 F.2d at 910.)
 The criminal charges were dropped against one of the brothers, who also agreed not to contest civil forfeiture, and the other returned to Germany where he was imprisoned for a narcotics offense. The government proceeded with the civil forfeiture, and a default judgment was entered for the government. The imprisoned German finally returned to the United States where he was found guilty of making a false official statement when he violated the currency reporting requirement. See 18 U.S.C. Sec. 1001 (1976). He then sought relief from the default civil forfeiture judgment by filing a Rule 60(b) motion, which was denied for lack of a meritorious defense. On review, this court considered, inter alia, whether the district court had abused its discretion when it determined that the Rule 60(b) motion must be denied.
 We acknowledged the potential for confusion and noted that there was some ambiguity with respect to both the available defenses and the amount of discretion the district court had in determining whether forfeiture should be imposed. We vacated the denial of the 60(b) motion and remanded the case, stating that "[i]n the limited circumstances of this case, ... the existence of a colorable defense is sufficient to warrant granting of the Rule 60(b) motion and that the failure of the district judge to do so was an abuse of discretion." Id. at 915. Given the particular facts in that case, the very different procedural posture, and the court's footnote recognizing that the statute "does not specifically require willfulness in failing to comply with the reporting requirement ...," $48,595, 705 F.2d at 915, this case is hardly controlling here.
 
 
 [5]
 See also United States v. $173,081.04 in U.S. Currency, 835 F.2d 1141, 1143 (5th Cir.) (rejecting a knowledge requirement), cert. denied, 488 U.S. 850, 109 S.Ct. 133, 102 L.Ed.2d 106 (1988); United States v. Forty-Seven Thousand Nine Hundred Eighty Dollars ($47,980) in Canadian Currency, 804 F.2d 1085, 1090 (9th Cir.1986) (same), cert. denied, 481 U.S. 1072, 107 S.Ct. 2469, 95 L.Ed.2d 878 (1987)
 
 
 [6]
 But even if we were to decide otherwise, the government has presented abundant evidence that Mr. Yusuf had been informed of (and indeed had apparently complied with) the requirement of reporting sums in excess of $10,000.00 when entering the United States on other occasions, that there were prominent signs in a language that he understood, that the Form 6059B gave clear notice of the reporting requirement, and that he would have been questioned once again prior to being allowed to exit the customs area at the Miami International Airport. Even the Eleventh Circuit, while interpreting the statute to require knowledge of the reporting requirement, conceded that Customs could easily take steps to inform travelers about the requirement. $24,900, 770 F.2d at 1536. We would also note that quite recently, in a criminal context, we have permitted evidence of prior completed declaration forms to be introduced to indicate knowledge of the reporting requirements. See United States v. Obiuwevbi, 962 F.2d 1236, 1241 (7th Cir.1992)
 
 
 [7]
 Similarly, circumstantial evidence was found to constitute probable cause in $400,000, 831 F.2d at 87. In $400,000, the Fifth Circuit held that the factual findings of the district court constituted probable cause for seizing the currency as violative of the currency reporting requirements: the claimant had told the bank official that he had brought the money into the United States from Mexico and reported it at the San Ysidro border, no report was located at either of two borders, the claimant was resident in Mexico, he had recently come across the border prior to making a visit to the bank, and he was nervous while the currency was being counted. $400,000, 831 F.2d at 87
 
 
 [8]
 See Brown & Williamson Tobacco Corp. v. Jacobsen, 827 F.2d 1119, 1134 (7th Cir.1987) (citing Coates v. Johnson & Johnson, 756 F.2d 524, 551 (7th Cir.1985)), cert. denied, 485 U.S. 993, 108 S.Ct. 1302, 99 L.Ed.2d 512 (1988)); see also United States v. One 1972 Mercedes-Benz 250, 545 F.2d 1233 (9th Cir.1976) (in a forfeiture proceeding, no evidence of bad faith when evidence was destroyed)
 
 
 [9]
 Indeed, when the district court granted a second continuance, the judge warned that if Mr. Yusuf was not prepared to appear at the next scheduled trial date, "the court will consider granting judgment in favor of the government." R. 71
 
 
 [10]
 Mr. Yusuf maintains that if we find either that the burden of proof was misallocated or that the government should have been sanctioned for failure to produce the customs form, then he was entitled to the dual inference instruction in his favor. We have declined, however, to rule in favor of Mr. Yusuf on either of these contentions
 
 
 [11]
 The negative answer does not deprive Mr. Yusuf of standing to challenge the forfeiture, however, because there is authority for the proposition that standing may be conferred in forfeiture cases on the basis of possessory interests alone. See $122,043, 792 F.2d at 1473 n. 5 (collecting cases)
 
 
 [12]
 We note in any case that Special Verdict No. 2 asked whether Mr. Yusuf had notice that he was required to complete a Form 6059B on entering the country. As we have said earlier, this form indicated the need to report sums in excess of $10,000.00 and gave the reader notice of the possible consequences of failure to do so